# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| LINDA L. HAWKINS, | ) CASE NO.  3:11-cv-1725 |
| Plaintiff, | ) |
| v. | ) MAGISTRATE JUDGE<br>) VECCHIARELLI |
| MICHAEL J. ASTRUE,<br>    Commissioner of Social Security, | ) |
| Defendant. | ) **MEMORANDUM OPINION AND**<br>) **ORDER** |

Plaintiff, Linda L. Hawkins ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("the Commissioner"), denying her application for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 ("the Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I. PROCEDURAL HISTORY

On April 18, 2007, Plaintiff protectively filed an application for a POD and DIB and alleged a disability onset date of December 31, 2003.  (Tr. 8.)  The application was denied initially and upon reconsideration, so Plaintiff requested a hearing before an administrative law judge ("ALJ").  (Tr. 8.)  On August 11, 2009, an ALJ held Plaintiff's hearing by video.  (Tr. 8.)  Plaintiff participated in the hearing, was represented by counsel, and testified.  (Tr. 8.)  A vocational expert ("VE") also participated and testified.  (Tr. 8.)

Plaintiff's counsel noted that Plaintiff received a prior unfavorable decision dated February 23, 2007, wherein the ALJ at that time found Plaintiff could perform sedentary work that existed in significant numbers in the national economy.[1]  (Tr. 26.)  Counsel suggested that, assuming the prior determination controls, Plaintiff automatically would be disabled under the Grids[2] because she was over 50 years old; therefore, Plaintiff's alleged disability onset date would be amended to August 13, 2008.  (*See* Tr. 26.)

On February 23, 2010, the ALJ found Plaintiff not disabled through her date last insured.  (Tr. 15.)  The ALJ noted Plaintiff's prior unfavorable decision and explained that "based on new and material evidence, I am not bound by the findings of the prior

---

[1] The February 23, 2007, decision is located in the Transcript of Administrative Proceedings at pages 44 through 50.  The record and the parties do not indicate that Plaintiff appealed that decision to the Appeals Council.

[2] The "Grids" are the Medical-Vocational Guidelines.  See *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).  When a claimant's characteristics coincide with the elements of the Grids, the Grids can be used in lieu of expert testimony to direct a finding of whether the claimant is able to perform a significant number of jobs in the national economy.  See *Siterlet v. Sec'y of Health & Human Servs.*, 823 F. 2d 918, 922 (6th Cir. 1987).

[ALJ]."  (Tr. 8.)  On June 30, 2011, the Appeals Council declined to review the ALJ's decision, so the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)

On August 17, 2011, Plaintiff filed her complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  On November 8, 2011, Plaintiff filed her Brief on the Merits.  (Doc. No. 10.)  On December 29, 2011, the Commissioner filed his Brief on the Merits.  (Doc. No. 14.)  On January 4, 2012, Plaintiff filed a Reply Brief.  (Doc. No. 15.)

Plaintiff asserts three assignments of error:  (1) the ALJ's assessment of her credibility is not supported by substantial evidence; (2) the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence; and (3) the ALJ failed to assess Plaintiff under the Grids and find her disabled.

## II.   EVIDENCE[3]

---

[3] The Commissioner did not set forth any facts in the Statement of Facts section of his Brief on the Merits, but explained that "[i]n lieu of a statement of facts, and in the interest of brevity, Defendant refers this Court to the ALJ's discussion of the relevant medical and testimonial evidence."  (Def.'s Br. 2.)  The Court reminds the Commissioner that the Magistrate Judge's initial order in this case instructs that "Defendant's brief . . . shall cite, by exact and specific transcript page number, all relevant facts in a 'Facts' section," and "[a] full recitation of all relevant evidence should be presented."  (Doc. No. 5.)  The Commissioner has not been excused from complying with this order, and a mere reference to the ALJ's opinion is inadequate.  There is no "FACT" section in the ALJ's opinion; the "facts" are interspersed throughout the opinion, and the opinion contains multiple pages of single-spaced text that recites evidence that may or may not be relevant to the Commissioner's arguments and the disposition of Plaintiff's assignments of error.  The Court will not cull through the record and speculate on which portion of the record a party relies; indeed, the Court is not obligated to wade through and search the entire record for some specific facts that might support a party's claims.  *See Centerior Serv. Co. v. ACME Scrap Iron & Metal*, 104 F. Supp.2d 729, 735 (N.D. Ohio 2000) (Gaughan, J.) (*citing InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)).  The Commissioner is further reminded that, if the Court were to

3

### A. Personal and Vocational Evidence

Plaintiff was 50 years old on her amended alleged disability onset date. (Tr. 27.) She completed the twelfth grade and could read and write. (Tr. 28.) She had past relevant work as a "dump cashier." (Tr. 14.)

### B. Relevant Medical Evidence

On June 14, 2007, state agency reviewing physician Diane Manos, M.D., adopted the RFC established in the prior ALJ's unfavorable ruling dated February 23, 2007, pursuant to Acquiescence Ruling 98-4, otherwise known as the *Drummond* ruling. (Tr. 611.) Dr. Manos specified that Plaintiff "has the residual functional capacity to perform sedentary work . . . with restrictions to frequent stooping, kneeling, crouching and crawling, and no work with sharp instruments." (Tr. 611.)

On January 30, 2009, state agency reviewing physician Louis A. Fuchs, M.D., testified in writing as a medical expert regarding Plaintiff's functional capacity. (Tr. 634-36.) Dr. Fuchs reviewing Plaintiff's medical records dated between 2003 and 2006 and indicated the following. (Tr. 634.) Plaintiff's impairments did not meet or medically equal an impairment in the listings. (Tr. 634.) Plaintiff could lift only 10 pounds, sit for about 6 hours in an 8-hour workday, and stand and walk for at least 2 hours in an 8-hour workday; and Plaintiff required the opportunity to periodically alternate between sitting and standing to relieve pain and discomfort. (Tr. 635.) Plaintiff's abilities to

---

consider only those facts set forth in Plaintiff's Brief on the Merits, it would be left with only Plaintiff's presentation of those facts; the Commissioner may not present any additional facts in support of his arguments that were not included in a proper Statement of Facts. Accordingly, the Court expects the Commissioner to properly set forth all facts relevant to his arguments in future briefs unless otherwise directed by Court order.

push, pull, bend, stoop, and crouch were affected by her impairments. (Tr. 635.) Plaintiff had only "slight" mental limitations. (Tr. 636.)

On September 8, 2009, Dr. William D. Padamadan, M.D., performed a consultative physical examination of Plaintiff on behalf of the Bureau of Disability Determination (Tr. 647-53), authored a medical source statement regarding Plaintiff's physical ability to do work-related activities (Tr. 654-59), and indicated the following. Plaintiff could lift and carry 50 pounds occasionally, 20 pounds occasionally, and 10 pounds continuously. (Tr. 564.) She could sit for 8 hours, and stand and walk for 4 hours in an 8-hour workday. (Tr. 655.) She did not require the use of a cane to ambulate. (Tr. 655.) She could continuously reach overhead and in all other directions, handle, finger, feel, push, and pull with both hands. (Tr. 656.) She could frequently operate foot controls with both feet. (Tr. 656.) She could never balance and climb ladders or scaffolds; and frequently stoop, kneel, crouch, and crawl. (Tr. 657.) She could never be exposed to unprotected heights or operate a motor vehicle. (Tr. 658.) She could frequently be exposed to moving mechanical parts. (Tr. 658.) And she could continuously be exposed to humidity and wetness; dust, odors, fumes, and other pulmonary irritants; extreme heat and cold; vibrations; and very loud noises. (Tr. 658.)

In sum, Dr. Padamadan opined that Plaintiff could perform activities such as shopping; travel without a companion for assistance; ambulate without using a wheelchair, walker, two canes, or two crutches; walk a block at a reasonable pace on rough or uneven surfaces; use standard public transportation; climb a few steps at a reasonable pace with the use of a single hand rail; prepare a simple meal and feed herself; care for her personal hygiene; and sort, handle, and use papers or files. (Tr.

5

659.)

On January 19, 2010, Plaintiff presented to the hospital emergency room with a complaint of pain in her left leg.  (Tr. 669.)  Plaintiff was diagnosed with "superficial thrombophlebitis."[4]  (Tr. 670.)  The next day, Plaintiff presented to Dr. Mark S. Mabus for a follow-up on her visit to the emergency room.  (Tr. 675.)  Dr. Mabus indicated that Plaintiff had been given a prescription for Coumadin in relation to a blood clot in her left leg; that Plaintiff did not fill the prescription "due to cost"; and that he informed Plaintiff the prescription cost only between four and ten dollars at a nearby pharmacy.  (Tr. 675.)  Dr. Mabus further indicated that he "vehemently encouraged her to get the prescription filled," and that he had "reservations about [her] compliance."  (Tr. 675.)

 **C.** **Hearing Testimony**

  **1.** **Plaintiff's Testimony**

Plaintiff testified at her hearing as follows.  She was disabled because she suffered swelling in her feet, ankles, joints, and her whole body; blood clotting; a brain tumor; a "slim case" of "MS"; carpal tunnel in both hands; decayed vertebrae in her back; a sleep disorder; and poor balance.  (Tr. 29-30, 32.)  She required a cane to maintain her balance while walking, although no doctor prescribed her a cane.  (Tr. 30-31.)  She had difficulty walking even with the use of a cane, and she often needed to stop and rest because she would become weak and out of breath.  (Tr. 32-33.)  She had difficulty climbing stairs.  (Tr. 32.)  She spent most of her day on a couch or in bed with her feet elevated "to keep the swelling down."  (Tr. 32, 34.)  She could sit for only

---

[4] "Thrombophlebitis" is "inflamation of a vein . . . associated with thrombus formation."  Dorland's Illustrated Medical Dictionary, *supra* note 4, at 1907.

6

10 or 15 minutes before he back would being to hurt. (Tr. 33.) She thereafter needed to lie down with her legs propped. (Tr. 33.) Her husband usually washed the dishes. (Tr. 33.) She could wash dishes and do laundry on a limited basis and generally in only a sitting position. (Tr. 33-34.)

She last saw a doctor in relation to her medical impairments two years prior. (Tr. 30.) She was prescribed medication, but she did not take it; she last took her medication two years prior. (Tr. 33.) She did not obtain medical treatment or medication because she had "no help to get in" and "can't get anything to take it." (Tr. 35.)

### 2. The VE's and Others' Testimony

The ALJ posed the following hypothetical to the VE:

> I want you to assume an individual of the claimant's age, education and past work experience. This hypothetical individual has a functional capacity to perform work at the sedentary level . . . with restrictions to frequent stooping, kneeling, crouching and crawling. This individual cannot do work involving sharp instruments.

(Tr. 37.) The VE testified that such a person could not perform Plaintiff's past relevant work. (Tr. 37.) The VE further verified that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. 38.) Plaintiff's counsel indicated he was satisfied with the VE's testimony; and the ALJ stated that he would order a consultative examination of the claimant. (Tr. 38.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y*

*of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§

404.1520(g), 404.1560(c), and 416.920(g).

The Social Security Administration may terminate benefits if it finds that the claimant's disability has ceased.  42 U.S.C. §§ 423(f) and 1382c(a)(4).  Evaluation of whether a claimant's disability has ceased is made on a neutral basis with no presumption that disability has continued.  See *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994).  The implementing regulations prescribe an eight-step sequential analysis for continuing disability reviews.  20 C.F.R. §§ 404.1594(f) and 416.994(b)(5).

## IV.   SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2008.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 31, 2003 through her date last insured.

3. Through the date last insured, the claimant had the following severe impairments: hypothyroidism, obesity, and a history of left lower extremity deep venous thrombosis.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the following residual functional capacity: she could lift/carry 20 pounds frequently and 50 pounds occasionally; sit for 8 hours, stand for 4 hours, and walk for 4 hours in an 8 hour workday; occasionally climb stairs but never ladders or scaffolds; frequently stoop, kneel, crouch, or crawl but never balance; and she could be frequently exposed to moving mechanical parts but should avoid exposure to unprotected heights and not operate a

9

> motor vehicle.
>
> 6. Through the date last insured, the claimant was capable of performing past relevant work as a dump cashier. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 31, 2003, the alleged onset date, through December 31, 2008, the date last insured.

(Tr. 10-14.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a

preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

### B. The ALJ's Assessment of Plaintiff's Credibility

Credibility determinations regarding a claimant's subjective statements rest with the ALJ, *see Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); and the ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly, *see Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).  Here, the ALJ found Plaintiff less than credible because: Plaintiff had not sought medical care for her alleged symptoms for the past two years; there was evidence that Plaintiff's hypothyroidism was treatable with medication; although Plaintiff alleged that she did not receive treatment and take medication because she could not afford it, Dr. Mabus indicated that some of her medication was relatively inexpensive; Dr. Mabus expressed reservations about Plaintiff's compliance with treatment; and Plaintiff's statements were inconsistent with Dr. Padamadan's evaluation, which "was essentially normal and did not substantiate significant physical restrictions."[5]  (Tr. 12-13.)

Plaintiff contends that the ALJ's assessment of her credibility is not supported by substantial evidence because other evidence of her condition prior to August 13, 2008 (the amended alleged disability onset date), supports her testimony at her hearing.

---

[5] The ALJ noted, for example, that Dr. Padamadan indicated Plaintiff's use of a cane was not medically necessary.  (Tr. 13.)

11

Plaintiff specifically points out that she had been diagnosed with possible multiple sclerosis, a brain tumor, minimal diffuse disc bulging in her spine, and mild obstructive sleep apnea; and that Dr. Manos and Dr. Fuchs essentially opined she was able to perform only sedentary work.

As an initial matter, a decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. Further, the evidence to which Plaintiff cites does not necessarily support her credibility. The mere diagnosis of an impairment says nothing about the severity of that impairment. *See, e.g., Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) ("The mere fact that plaintiff suffered from a dysthymic disorder . . . does not automatically entitle plaintiff to the receipt of benefits. Rather, in order to qualify for the receipt of benefits . . . plaintiff must show that she was disabled by her dysthymic disorder."); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."). Moreover, Dr. Manos's and Dr. Fuchs's opinions are based on a review of Plaintiff's medical records dated over one year before Plaintiff's amended alleged disability onset date; that is, their opinions do not indicate Plaintiff's condition on or after her amended alleged disability onset date and, therefore, do not support her allegations of the extent to which she was limited at that time.

Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Here, the ALJ's

12

bases for finding Plaintiff less than fully credible were valid and reasonably support his determination of Plaintiff's credibility.  Accordingly, this assignment of error is not well taken.

### C. The ALJ's RFC Determination and the Grids

On February 23, 2007, an ALJ found Plaintiff limited to sedentary work and able to perform other work in the national economy.  (Tr. 47, 49-50.)  Plaintiff contends that, pursuant to *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), and Acquiescence Ruling 98-4(6), the ALJ was required to adopt that prior determination and find Plaintiff limited to sedentary work.  Plaintiff continues that, as she is limited to sedentary work, she is automatically disabled based on her age under the Grids.  For the following reasons, these contentions are not well taken.

Absent substantial evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ.  *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842-43 (6th Cir. 1997).  Plaintiff contends that Dr. Padamadan's evaluation of Plaintiff does not constitute substantial evidence that Plaintiff's condition improved since the prior ALJ rendered his decision because Dr. Manos and Dr. Fuchs opined that Plaintiff was limited to sedentary work.  This argument suggests an incorrect legal standard, as a decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  Further, the ALJ explained that he gave little weight to Dr. Manos's opinions because they were rendered before Plaintiff's amended alleged disability onset date.  (Tr. 13.)  Dr. Fuchs's opinions suffer the same defect—they do not relate to

13

Plaintiff's condition after the amended alleged disability onset date.

The ALJ found that Dr. Padamadan's examination revealed Plaintiff was "much less limited than previously determined."  (Tr. 13.)  The ALJ gave "great weight" to Dr. Padamadan's opinions because Dr. Padamadan "performed a comprehensive examination demonstrating the current status of [Plaintiff's] condition," and "offered his opinion based upon the examination signs and findings."  (Tr. 13.)  Plaintiff has not taken issue with the ALJ's assessment of the merits of Dr. Padamadan's opinions; and Plaintiff failed to submit or cite to any medical records subsequent to the first ALJ's decision—and after her amended alleged disability onset date—that are inconsistent with Dr. Padamadan's opinions.  In the absence of any apparent defect in Dr. Padamadan's opinions, it was reasonable for the ALJ to give more weight to them than Dr. Manos's and Dr. Fuchs's opinions.

The ALJ explained his reasons for rejecting the prior ALJ's RFC determination as follows.  The prior ALJ found Plaintiff was limited to sedentary work because there was "evidence of lower extremity edema corroborative of difficulty standing/walking, obesity, and crepitus of the knees."  (Tr. 13.)  Dr. Padamadan's evaluation, however, revealed no crepitus and very little evidence of edema; and the edema that was present was attributable to myxedema, which was treatable with thyroid medication.  (Tr. 14.)  And although Plaintiff testified that she could not afford medication, there was no documented evidence supporting that allegation.  (Tr. 14.)  This evidence reasonably supports the ALJ's finding that Plaintiff's condition had improved.  Accordingly, Plaintiff's contention that the ALJ was bound by the prior ALJ's RFC determination is not well taken.

Finally, Plaintiff's contention that the ALJ failed to consider her under the Grids and find her disabled is not well taken, as the contention is predicated on her argument that the prior ALJ's RFC finding controlled.

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

                                          s/ *Nancy A. Vecchiarelli*
                                          U.S. Magistrate Judge

Date: June 6, 2012